**IN THE UNITED STATES
COURT OF INTERNATIONAL TRADE**

| | |
|---|---|
| CAMEL ENERGY, INC., | Case No.: 25-00420 |
| Plaintiff, | |
| v. | Hon._____ |
| UNITED STATES OF AMERICA and UNITED STATES CUSTOMS AND BORDER PROTECTION, | |
| Defendants. | |

**COMPLAINT**

Plaintiff Camel Energy, Inc., states as follows against Defendant the United States of America ("United States") and U.S. Customs and Border Protection ("CBP") (collectively, "Defendants"):

**PARTIES AND JURISDICTION**

1. This action challenges Defendants' denial of Plaintiff's protest challenging CBP's decision to exclude forty-three (43) of Plaintiff's shipments from entry into the United States under the Uyghur Forced Labor Prevention Act ("UFLPA") and 19 U.S.C. § 1307.

2. This action is nearly identical to another action asserted by CEI currently pending in the U.S. Court of International Trade before Judge Claire R. Kelly, *Camel Energy, Inc. v. United States, et al.*, Case No. 25-00230, because it challenges the exclusion of the same kind of merchandise (lead-acid batteries) produced by the same manufacturer with the same supply-chain information and the same shipping records as well as the same importer-of-record (CEI). Put another way, these matters arise out of the same set of operative, underlying facts and would be resolved using substantially similar documents that would be produced in discovery. However, as explained further below, because in this present case CBP "…took no action and a deemed

1

exclusion of merchandise occur[ed], the burden of proof, typically resting on the complainant, switches to CBP to demonstrate 'that it has good cause for not reaching an admissibility decision.'" *Root Scis., LLC v. United States*, 543 F. Supp. 3d 1358, 1365–66 (Ct. Int'l Trade 2021) (internal citations omitted). Despite the differences regarding burden-of-proof, for purposes of judicial economy, judicial efficiency, uniformity, and the Court's resources, Judge Kelly's experience and role in CEI's previous matter may make her well-placed to preside over this one as well.

3. This Court has exclusive jurisdiction over this action under 28 U.S.C. § 1581(a).

4. Plaintiff Camel Energy, Inc. ("CEI") is as Michigan corporation and has been conducting business in the United States since 2016. CEI and its affiliates design, manufacture, ship, and sell batteries world-wide.

5. CEI has standing to bring this suit under 28 U.S.C. § 2631(a).

6. Defendant United States is the federal defendant. The actions complained of herein were undertaken by its agency CBP, which is a component of the U.S. Department of Homeland Security ("DHS").

7. CBP is a federal agency of the United States government and is located in the District of Columbia with its principal office at 1300 Pennsylvania Avenue, N.W., Washington, D.C. 20229. CBP is an agency within DHS. Among its duties, CBP enforces federal laws regulating the importation of goods into the United States, including making admissibility determinations under 19 U.S.C. § 1307 and UFLPA.

8. Pursuant to Court of International Trade Rule 4(h), Defendant United States of America may be served by delivering or sending a copy of the summons and complaint to the Attorney-in-Charge, International Trade Field Office, Commercial Litigation Branch, U.S. Department of Justice.

9. Pursuant to Court of International Trade Rule 4(h)(2), Defendant CBP may be served by serving the United States and also sending a copy of the summons and complaint by registered or certified mail, return receipt requested, to the agency, corporation, or officer or employee. Specifically, CBP may be served by sending the summons and complaint by registered or certified mail to Office of Chief Counsel, U.S. Customs and Border Protection, 1300 Pennsylvania Avenue, Suite 4.4-B, Washington, D.C., 20229. *See* [Service of Process | U.S. Customs and Border Protection](#) (last accessed Nov. 26, 2025).

## LEGAL BACKGROUND

10. Under 19 U.S.C. § 1499, CBP is empowered to inspect, examine, and appraise merchandise before permitting or denying it entry into the United States. Merchandise "found to comply with the requirements of the laws of the United States" is given entry into the United States. *See* 19 U.S.C. § 1499(a)(1). Merchandise that does not comply with the requirements of the laws of the United States may be excluded from entry into the United States.

11. In December 2021, Congress passed, and President Biden signed into law, the UFLPA. The UFLPA went into effect on June 21, 2022, and directs an inter-agency U.S. government task force that combats forced labor to create and maintain a list of entities it has a reasonable basis to believe are manufacturing goods wholly or in part with forced labor from certain ethnic minorities in the Xinjiang Uyghur Autonomous Region of the People's Republic of China ("XUAR") known as the "UFLPA Entity List".

12. The UFLPA also prohibits goods from importation into the United States if those goods are mined, produced, or manufactured with forced labor wholly or in part in XUAR or by an entity on the UFLPA Entity List. *See* 19 U.S.C. § 1307; UFLPA § 3(a).

13. When CBP believes merchandise may be subject to the UFLPA, it generally proceeds by detaining the suspect merchandise.

14. Under 19 U.S.C. § 1499(c)(1), CBP must "[w]ithin a 5-day period . . . following the date on which merchandise is presented for customs examination . . . decide whether to release or detain the merchandise."

15. Once CBP decides whether to detain or release the merchandise, 19 U.S.C. § 1499(c)(2) requires CBP to "issue a notice to the importer or other party having an interest in detained merchandise no later than 5 days . . . after the decision to detain the merchandise is made."

16. Once an importer receives a detention notice, the importer may submit arguments and evidence to CBP showing that the detained merchandise is not subject to the UFLPA; and if CBP determines by "by clear and convincing evidence" that the detained merchandise is not subject to the UFLPA, then it will release the merchandise.[1]  *See* UFLPA § 3(b), Pub. L. 117-78, 135 STAT. 1529.

17. CBP must make a final determination on "admissibility" of the merchandise, that is whether to allow or exclude the detained merchandise from entry into the United States, within 30 days of the date of detention. 19 U.S.C. § 1499(c)(5)(A).

18. If CBP does not issue an admissibility decision within 30 days of the date of detention, then CBP is *deemed* to have excluded the merchandise as a matter of law and for purposes of 28 U.S.C. § 1581. 19 U.S.C. § 1499(c)(5)(B).

---

[1] CEI has a successful history of having its merchandise released after being detained pursuant to the UFLPA. In fact, on two separate occasions prior to this complaint, CBP issued formal, written determinations that CEI's merchandise is not made with forced labor in XUAR and is not subject to the UFLPA based on "clear and convincing evidence" submitted by CEI. *See Camel Group Co., Ltd. v. United States, et. al.*, Case No. 1:25-cv-00022 (Ct. of Int'l Trade), ECF 5-10 and 5-11.

19.     CBP's decision to exclude (or an exclusion as a matter of law (*i.e.*, a "deemed" exclusion) that comes about because CBP has not acted in a timely manner) goods or merchandise from entry into the United States is protestable under 19 U.S.C. § 1514(a)(4).  *See also* 19 C.F.R. 174.11(b)(4).

20.     "A protest of a decision, order, or finding described in subsection (a) shall be filed with the Customs Service within 180 days after but not before . . . the date of the decision as to which protest is made." 19 U.S.C. § 1514(c)(3)(B).

21.     "If the protest relates to an administrative action involving exclusion of merchandise from entry or delivery under any provision of the Customs laws, the [Centers of Excellence and Expertise] director shall review and act on a protest . . . within 30 days from the date the protest was filed." 19 C.F.R. § 174.21(b).

22.     When CBP fails to review and act on a protest within 30 days, the law deems the protest denied and allows the importer of record to file suit in this Court challenging the deemed denial of the protest. *See* 19 C.F.R. § 174.21(b) ("Any protest filed pursuant to this paragraph which is not allowed or denied in whole or in part before the 30th day after the day on which the protest was filed shall be treated as having been denied on such 30th day for purposes of 28 U.S.C. § 1581.").

23.     "Once a court action respecting a detention is commenced, unless CBP establishes by a preponderance of the evidence that an admissibility decision has not been reached for good cause, the court will grant the appropriate relief which may include, but is not limited to, an order to cancel the detention and release the merchandise." *See* 19 C.F.R. 151.16(i),

24.     "*In the instance in which CBP takes no action and a deemed exclusion of merchandise occurs, the burden of proof, typically resting on the complainant, switches to CBP* to

demonstrate 'that it has good cause for not reaching an admissibility decision.'") *Root Scis., LLC v. United States*, 543 F. Supp. 3d 1358, 1365–66 (Ct. Int'l Trade 2021) (internal citations omitted) (emphasis added).

## **STATEMENT OF FACTS**

25. CEI is a Michigan corporation and has been conducting business in the United States actively since 2016, including the sale of lead-acid batteries to U.S. customers.

26. CEI imports an enormous quantity of lead-acid batteries into the United States. Since August 21, 2025, alone, CBP has detained or excluded over *190* separate shipments of lead-acid batteries at multiple ports around the United States.

27. While CEI has responded to the notices of detention and protested the notices of exclusion of more than 110 of these shipments—and continues to file protests as quickly as it can—it has not received a decision from CBP on any of those responses and protests regarding whether the merchandise was subject to the UFLPA.

28. Identifying information about the **43 total entries** at issue in this case, collectively, "Entries," is attached as **Exhibit A** to this complaint. The contents of Exhibit A are hereby incorporated into the complaint as though fully stated here.

29. As noted in Exhibit A, the Entries were detained at the ports of Dallas, Memphis, San Francisco, Atlanta, Tampa, New York, and Detroit.

30. As noted in Exhibit A, the Entries were detained between August 21, 2025, and September 18, 2025.

31. A Detention Notice for Entry No. DSV75955028 is attached as **Exhibit B**. Exhibit B is exemplary of the other forty-two (42) detention notices CBP sent to CEI for the Entries listed in Exhibit A.

32. Defendants are in possession of all forty-three Notices of Detention at issue in this action.

33. Each notice of detention for each of the Entries listed in Exhibit A identified (in substantially the same manner as Exhibit B) each entry as being detained on suspicion of being made with forced labor and subject to the UFLPA, that is, as being *either* manufactured in whole or in part in the XUAR *or* manufactured by an entity on the UFLPA Entity List.

34. In the notices of detention for each of the Entries listed in Exhibit A, CBP requested evidence that the products contained in the Entries were not manufactured in whole or in part using forced labor in XUAR or by an entity on the UFLPA Entity List, and to supply supporting documentation of the same "within 30 days from the date of this detention notice." *See* Exhibit B.

35. CEI is not and has never been on the UFLPA Entity List, and to the best of Plaintiff's knowledge and belief, none of the suppliers responsible for the manufacture of the merchandise are on the UFLPA Entity List, *see* [UFLPA Entity List | Homeland Security](UFLPA Entity List | Homeland Security) (last visited December 5, 2025).

36. Based on the facts of ¶ 35 above, CEI began preparing response packages to CBP's forty-three notices of detention that would show each of the Entries listed in Exhibit A were not manufactured "in whole or in part" in XUAR using forced labor.

37. The merchandise in each of the Entries listed in Exhibit A were lead-acid batteries only intended for use in automobiles, farming tractors, lawn equipment, or other heavy machinery.

38. The lead-acid batteries in each Entry listed in Exhibit A are all closely related because they were all manufactured using the same supply chain, that is they were manufactured at the same plant in Malaysia by the same company using the same raw-material suppliers, the same processes, and the same shipping methods.

39. As each of the Entries listed in Exhibit A were detained, CEI filed a response to the detentions, explaining why the UFLPA does not apply. The dates of submission of each of those forty-three responses are noted in Exhibit A.

40. The response letter and table of contents of exhibits that accompanied CEI's response to CBP's Notice of Detention for Entry No. DSV75955028 is attached as **Exhibit C**.[2] Exhibit C is exemplary of the other forty-two (42) responses CEI sent to CBP about the Entries listed in Exhibit A.

41. Defendants are in possession of all forty-three responses to CBP's Notices of Detention at issue in this action.

42. CBP failed to act on or resolve a single one of CEI's forty-three responses, and it failed to make a final determination on the admissibility of any of the forty-three Entries listed in Exhibit A.

43. After 30 days passed without CBP acting on or resolving a single one of CEI's forty-three responses, the Entries listed in Exhibit A were deemed excluded by operation of law. *See* 19 U.S.C. § 1499(c)(5).

44. Accordingly, CEI filed forty-three different protests of exclusion, challenging CBP's legal basis for excluding the Entries listed in Exhibit A. The Protest Number of each protest and the date on which the protest was filed are included in Exhibit A.

45. The Form 19 Protest that CEI submitted for Entry No. DSV75955028 is attached as **Exhibit D**. Exhibit D is exemplary of the other forty-two (42) Form 19 Protests CEI sent to CBP about the Entries listed in Exhibit A.

---

[2] CEI is willing to produce the contents of these exhibits in discovery subject to an appropriate protective order in order to safeguard CEI's business confidential information.

46.     Defendants are in possession of all forty-three Form 19 Protests at issue in this action.

47.     On the face of each protest, CEI clearly and unambiguously stated: "Camel Energy, Inc. protests CBP's deemed exclusion of [each entry's specific Entry Number]."

48.     As part of its protests, CEI submitted a plethora of arguments, evidence, and documents applicable to each entry individually proving the merchandise in the Entries were not produced in whole or in part using forced labor in or with any inputs from the XUAR region, and were not produced in whole or part using any input from any entity on the UFLPA Entity List since, again, CEI and, to the best of Plaintiff's knowledge and belief, its suppliers are is not on the UFLPA Entity List.

49.     CEI made multiple requests to CBP for the evidence it relied on to exclude the Entries listed in Exhibit A, but CBP failed to respond to (or outright ignored) each and every request.

50.     CBP has not timely responded to or provided a decision on CEI's protests of the exclusion of the Entries listed in Exhibit A, despite being obligated to review and act on the protests within 30 days. *See* 19 C.F.R. § 174.21(b).

51.     Thirty days have come and gone and nothing in the record suggests that CBP has reviewed or acted on CEI's protests of exclusion of the Entries listed in Exhibit A. It is as if CEI just sent its information to a CBP "black box" never to be heard from again.

52.     Because CBP refuses to timely engage with CEI regarding the merits of CEI's protests of the exclusion of the Entries listed in Exhibit A, for purposes of this action, each protest is "deemed denied," and this Court has jurisdiction to review such "deemed denial" under 28 U.S.C. § 1581(a). *See* 19 U.S.C. § 1499(c)(5)(B); *see also Root Scis., LLC*, 543 F. Supp. 3d at

9

1361 (Ct. Int'l Trade 2021), *reconsideration denied*, 560 F. Supp. 3d 1357 (Ct. Int'l Trade 2022) ("Under 19 U.S.C. § 1499(c)(5)(B), if CBP fails to respond to a protest of an exclusion within thirty days, that protest will be deemed denied. That denial is then appealable to the court under 28 U.S.C. § 1581(a).").

53. Because CBP failed to make an admissibility determination for the subject merchandise within 30 days of receiving CEI's response to CBP's Notice of Detention, failed to make a determination of CEI's protests of CBP's deemed exclusion of the subject merchandise within 30 days, and took no action regarding CEI's responses and protests, CBP now bears the burden of proof to show that it had good cause to refuse to make an admissibility decision. *See* 19 C.F.R. 151.16(i); *Root Scis., LLC*, 543 F. Supp. 3d at 1365–66 (Ct. Int'l Trade 2021).

### COUNT I – Judicial Review of "Deemed Denial" of the Entries listed in Complaint Exhibit A Under 28 U.S.C. § 1581(a)

54. CEI incorporates the paragraphs above as well as Exhibit A of this complaint as though they were restated here.

55. From August 21 to September 18, 2025, CBP detained the Entries listed in Exhibit A under 19 U.S.C § 1499(c), alleging the merchandise in the Entries listed in Exhibit A were subject to the UFLPA and were therefore barred from entry into the United States.

56. CEI responded to CBP's notices of detention for each of the Entries listed in Exhibit A by submitting explanatory letters and a plethora of documents and evidence showing that the detained merchandise in the Entries listed in Exhibit A is not subject to the UFLPA.

57. CBP failed to act on CEI's responses or make a final admissibility determination for each of the Entries in Exhibit A within 30 days of CEI's submission of its responses and evidence.

58. As a result, CEI's responses to CBP's detention of the subject merchandise for each of the Entries in Exhibit A are deemed denied and the merchandise is deemed excluded by operation of law. *See* 19 U.S.C. § 1499(c)(5).

59. After each of the Entries listed in Exhibit A were deemed excluded, CEI filed a protest and submitted evidence for each of the Entries in Exhibit A. The date of each protest and its assigned Protest Number is recorded in Exhibit A.

60. CBP failed to respond to and otherwise act on CEI's protests of the deemed exclusion for each of the Entries in Exhibit A within 30 days of CEI's submission of its protests and evidence.

61. As a result of CBP's failure to act, CEI's protests of CBP's deemed exclusion of the subject merchandise are "deemed denied" for purposes of 28 U.S.C. § 1581(a) and are appealable to this Court. *See* 19 C.F.R. § 174.21(b); s*ee also* 19 U.S.C. § 1499(c)(5)(B); *see also Root Scis., LLC*, 543 F. Supp. 3d at 1361 (Ct. Int'l Trade 2021).

62. Where CBP fails to act and make a final admissibility decision to a protest within the statutory time limit, CBP bears the burden of proof to show that it had good cause for not making an admissibility determination, despite having months to do so. *See Root Scis., LLC v. United States*, 543 F. Supp. 3d 1358, 1365–66 (Ct. Int'l Trade 2021).

63. There are no outstanding requests from CBP for information or other data regarding the merchandise that provides CBP good cause for not having made an admissibility determination for the subject merchandise, despite having months to do so.

64. The exclusion of the Entries listed in Exhibit A is unlawful and must be reviewed and overturned because the merchandise in the Entries listed in Exhibit A are not subject to the UFLPA; neither CEI nor, to the best of its knowledge, any of its suppliers is on the UFLPA Entity

11

List; and the merchandise in the Entries listed in Exhibit A was not mined, produced, or manufactured wholly or in part using forced labor in the XUAR.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff CEI respectfully requests that the Court enter a Judgment in Plaintiff CEI's favor and (1) declare that the Entries listed in Exhibit A are not subject to the UFLPA; (2) vacate CBP's exclusion of the Entries listed in Exhibit A from the United States; (3) direct Defendants to allow the merchandise in the Entries listed in Exhibit A to enter the United States; (4) enter an order awarding Plaintiff CEI its attorneys' fees and all other reasonable expenses and costs incurred as a result of this action under 28 U.S.C. § 2412; and (5) award any other relief this Court deems just and proper.

Respectfully submitted,

**DICKINSON WRIGHT PLLC**

*/s/ Mark V. Heusel*
Mark V. Heusel
Jacob L. Clark
Daniel C. Ziegler
DICKINSON WRIGHT PLLC
350 S. Main Street, Suite 300
Ann Arbor, MI 48104
(734) 623-1908
mheusel@dickinsonwright.com
jlclark@dickinsonwright.com
dziegler@dickinson-wright.com
*Attorneys for Plaintiff Camel Energy, Inc.*

**DATE:** December 8, 2025

**IN THE UNITED STATES
COURT OF INTERNATIONAL TRADE**

| | |
|---|---|
| CAMEL ENERGY, INC., | Case No.: 25-00420 |
| Plaintiff, | |
| v. | Hon._____ |
| UNITED STATES OF AMERICA and UNITED STATES CUSTOMS AND BORDER PROTECTION, | |
| Defendants. | |

**COMPLAINT EXHIBIT LIST**

| Exhibit No. | Description of Exhibit |
|---|---|
| A | List of Entries Subject to this Litigation |
| B | CBP Notice of Detention of Entry No. DSV75955028 |
| C | CEI Response to Notice of Detention of Entry No. DSV75955028 |
| D | CEI Protest of Deemed Exclusion of Entry No. DSV75955028 |

13