IN THE UNITED STATES
COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| CAMEL ENERGY, INC., | |
| Plaintiff, | Case No.: 25-00420 |
| v. | |
| UNITED STATES OF AMERICA and UNITED STATES CUSTOMS AND BORDER PROTECTION, | Hon. Claire R. Kelly |
| Defendants. | |

**PLAINTIFF'S MOTION TO EXPEDITE AND PROPOSED SCHEDULE**

Pursuant to USCIT Rule 3(g)(3) and in compliance with USCIT Rule 7, Plaintiff Camel Energy, Inc. ("Camel" or "Plaintiff") moves this Court to expedite this case and give it precedence over other pending actions. This case concerns the denial of Plaintiff's protests of Defendant United States Customs and Border Protection's ("CBP") exclusion of forty-three entries of lead-acid batteries ("Merchandise") from entry into the United States. *See* ECF 2 ¶ 64. A complete list of the forty-three entries is attached to the Complaint as Exhibit A. *See* ECF 2-1. The court has previously granted Plaintiff an expedited litigation schedule in a related case, *Camel International, Inc. v. United States*, 25-00230 (U.S. CIT, Kelly, J.) ("Related Litigation") at ECF 18, where Plaintiff is similarly challenging the denial of its petition against CBP's exclusion of two separate entries. For the sake of judicial economy and efficiency, Plaintiff attempted to align with Defendants on a joint expedited schedule, but were unable to come to an agreement. Here, and for substantially the same reasons as in the Related Litigation, Plaintiff again requests expedited relief pursuant to USCIT Rule 3(g)(3) in this matter, and respectfully asks the Court to grant this motion to expedite and enter the proposed order appended to this motion.

1

I. **LEGAL STANDARD**

USCIT Rule 3(g)(3) provides: "On motion for good cause or on its own the court may expedite the following actions and give them precedence over other pending actions: . . . (3) An action described in 28 U.S.C. § 1581(a) to contest the denial of a protest, in whole or in part, under section 515 of the Tariff Act of 1930, involving the exclusion or redelivery of merchandise[.]" This action was brought under 28 U.S.C. § 1581(a) to contest the deemed denial of a protest involving the exclusion of Merchandise. *See* ECF 2 ¶ 3. There are two ways in which this Court could expedite this case: (1) "[o]n motion for good cause"; *or* (2) "on its own" **without** a finding of good cause. USCIT Rule 3(g)(3).

In *Eteros Techs.*, the Court explained in more detail that good cause to expedite exists "[1] in a case in which failure to expedite would result in mootness or deprive the relief requested of much of its value, [2] in a case in which failure to expedite would result in extraordinary hardship to a litigant, **or** [3] actions where the public interest in enforcement of the statute is particularly strong." *Eteros Techs. USA, Inc. v. United States*, 774 F. Supp. 3d 1358, 1360 (Ct. Int'l Trade 2025) (emphasis added). While this Court does not need to find good cause to expedite this case or even that all elements of good cause have been met, all three circumstances for good cause exist as well as additional circumstances for the reasons explained below.

II. **ARGUMENTS**

**(1) Plaintiff's proposed schedule mirrors the expedited schedule ordered in the Related Litigation**

Counsel for Plaintiff and Defendants have already met and conferred regarding a proposed schedule. In fact, Plaintiff even agreed to Defendants' proposed dates for its Answer and motions on the pleadings and preliminary matters. The disagreement is not whether there is good cause to expedite this case (there is) or even Defendants' response

2

dates in the schedule, but rather the only disagreement is on the timing of discovery for this matter. Plaintiff proposes a 3-month discovery period as this Court has set out in the Related Litigation (Case No. 25-230, *see* ECF 23), while Defendants request more than 4-months for discovery and pushing dispositive motions until summer.

It is worth noting that the entries subject to litigation in this case are substantially the same product with a substantially similar supply chain as the merchandise in the Related Litigation. Fact and document discovery as well as some witnesses will largely overlap with the Related Litigation, leaving only document requests and depositions specific to each port of entry as the only need in discovery for Plaintiff. As such, Plaintiff has suggested a schedule that contemplates an overlap in discovery and also allows ample time for Defendants to respond to the additional discovery in this matter without causing a significant delay of relief for the entries subject to this litigation. In fact, Plaintiff's proposed schedule mirrors the exact timeline set out by the Court in the Related Litigation, namely (i) an approximate 3-month discovery period from the date Defendants file its answer and (ii) 21 days between the end of discovery and the deadline for dispositive motions. The Court should enter Plaintiff's proposed schedule to maintain consistency and avoid excessive delays.

**(2) Good cause to expedite exists because failure to expedite will deprive the relief Plaintiff requested of much of its value.**

Plaintiff is a tier-one automotive supplier that supplies major automotive manufacturers and principal aftermarket distributors with batteries. Plaintiff imports approximately 2,000,000 batteries into the United States every year. Some batteries are imported fully completed and shipped straight to the end-user, whether that is an automotive manufacturer or an aftermarket distributor. Other batteries are imported partially completed. Those batteries are sent to Plaintiff's

battery production plant in Battle Creek, Michigan, where they are either completed and shipped to customers, or completed and held as reserve stock in case of supply chain disruption. To be clear, Plaintiff's reserve stock is not intended—*and cannot*—supply all of Plaintiff's customers *ad infinitum* in the event of a total disruption of the supply chain. Here, the Government has completely disrupted the supply chain because it is currently detaining or excluding over 200 shipments (hundreds of thousands of batteries) into the United States, including the exclusion of the 43 entries at issue in this case.

Plaintiff seeks expedited relief in this case to obtain the release of the currently detained or excluded batteries *before* it is unable to meet its customers' orders, *before* its customers experience supply-chain disruptions, and *before* its customers attempt to supplement its supply with batteries from Plaintiff's competitors. Plaintiff is confident that in more or less time it will prove the entry numbers contested in this case must be granted admittance to the United States. But if that determination is made in *more* time and not *less* time, then the relief sought by Plaintiff—release of the Merchandise *before* its customer's experience a supply-chain disruption or customers take action to supplement lost supply—will be impossible to achieve. The customers may lose their use for these batteries, and the batteries would thus diminish or be deprived of much of its value. Thus, there is good cause under factor one to expedite this case.

### (3) Good cause to expedite exists because failure to expedite will cause Plaintiff extraordinary hardship.

The Government began detaining entries in this case beginning on August 21, 2025. Since then, Plaintiff has been forced to store its shipments at the ports of entry in which they arrived or at a CBP-designated inspection site solely and directly because of the Government's decision to detain and exclude Plaintiff's shipments. The cost has been extraordinary. As evidenced in the attached declaration from Plaintiff's president Zubo Zhang, Plaintiff has incurred approximately

4

$6,600,000 in storage fees, re-shipping fees, and logistics fees directly due to the Government's decision to detain and exclude Plaintiff's shipments. Zhang Declaration, **Exhibit A**.

In *Eteros Techs.*, 774 F. Supp. 3d at 1361, the court did not credit an importer's argument that it suffered extraordinary hardship by not being allowed to bring in several of its international corporate partners to oversee the U.S.-based side of the business. There, the court found that mere allegations of "costly 'contract services'" in unspecified amounts that resulted from importer's inability to bring in its foreign partners were not an extraordinary hardship warranting expedited relief. *See id*. at 1361. This case is far cry from *Eteros Techs.* because Plaintiff is suffering concrete, calculable, specific, and identifiable damage at an extraordinary rate that Plaintiff himself can attest to. Ex. A, at ¶ 5. And because of the Government's continued detention and/or exclusion of Plaintiff's entries in this case and others, the rate at which Plaintiff is accruing damage in the form of storage, logistics, and demurrage charges have been astronomical.

The Government may argue that Plaintiff may not use the total damage it has suffered because of the Government's detention and exclusion of over 200 shipments to show good cause in this case, because this case only challenges the exclusion of 43 shipments. But all the shipments are all intertwined. They all contain batteries that were manufactured at the same Malaysian plant using the same raw materials and raw material suppliers, they were all detained and excluded on the same Uyghur Forced Labor Prevention Act ("UFLPA")-based grounds, and the Government has refused (to date) to respond or act on any of the evidence Plaintiff has submitted on any of the shipments. To date, the Government has treated all 200+ of Camel's entries as a monolithic whole. In light of this treatment to date, this Court should not allow the Government to now argue that the shipments are somehow distinct and severable only on the issue of amount of damages each entry is incurring and only in the context of whether to expedite this litigation. Besides, even if the

damages accruing from only 43 of the over 200 entries are considered, that is still $1,419,000 in damages, an extraordinary amount that would, on its own, militate in favor of expedited relief.

Lastly, Plaintiff and its customers suffer hardship from economic and reputational harm resulting from CBP's continued exclusion of the Entries. Plaintiff's customers cannot receive the benefit of the batteries they purchased, and Plaintiff is prevented from fulfilling its obligations to those customers. This puts Plaintiff's customers at risk of hardship and losses, and Plaintiff itself at risk of liability for its customers' losses and serious reputational harm. Moreover, even though Plaintiff has fully cooperated with providing supply chain mapping to CBP to the $N^{th}$-tier level and otherwise providing all of the information requested by CBP, Plaintiff's detentions and exclusions continue to increase in numbers and delay, further exacerbating Plaintiff's economic and reputational harm.

In sum, solely and directly because of the Government's decision to detain and exclude Plaintiff's shipments, Plaintiff has accrued over $6,600,000 in damages to date as well as untold amounts of damages and potential damage resulting from the risk of claims from customers and harm to Plaintiff's reputation in the market. Those damages continue to accrue each day, which is an extraordinary hardship on Plaintiff that creates good cause to expedite this case.

### (4) Good cause to expedite exists because the public interest in enforcement of the statute is particularly strong.

Under the United States Code and the Code of Federal Regulations, the Government has latitude on the timing of its review, detention, exclusion, and review of protests of exclusion of merchandise from entry into the United States. *See e.g.*, 19 C.F.R. § 151.16. But that latitude exists to allow the Government flexibility as it works—it does not exist as *carte blanche* permission for the Government to shirk its obligations. Indeed, when the Government shirks its obligations, the burden of proof in a lawsuit like this one rests on the Government to show that it

has good reason for failing to act. *Root Scis., LLC v. United States*, 543 F. Supp. 3d 1358, 1365–66 (Ct. Int'l Trade 2021) ("In the instance in which CBP takes no action and a deemed exclusion of merchandise occurs, the burden of proof, typically resting on the complainant, switches to CBP to demonstrate 'that it has good cause for not reaching an admissibility decision.'") (internal citations omitted) (emphasis added).

Here, the Government has used the flexibility of the United States Code and the Code of Federal Regulations to ignore Plaintiff and the evidence Plaintiff has provided for months.  For that reason, the Government now bears the burden of proof to show it had good cause for failing to act.  Furthermore, the Government's inaction creates good cause to expedite this case because the Government has *not* followed the law that *requires* them to review and act on Plaintiff's protest within 30 days resulting in the present lawsuit. *See* 19 C.F.R. § 151.16.  The public interest weighs in favor of compelling the Government to follow the law to review and act on Plaintiff's evidence per the timeline prescribed by law so that the Government may not wreak havoc on private companies by its inaction.

The public's interest further weighs in favor of expediting this case because over 200 shipments and hundreds of thousands of batteries, key components to Plaintiff's major automotive manufacturer and after-market supplier clients, are now detained and excluded from entry into the United States.  Plaintiff's customers and American automotive consumers rely on Plaintiff's ability to import batteries.  Thus, the public interest in avoiding supply-chain disruptions to major American automotive manufacturers and after-market battery suppliers as well as preventing American companies and persons from building and consuming American-made automobiles *when there is no legal basis for doing so* weighs in favor of forcing the Government to engage with the merits of Plaintiff's protest of exclusion, and quickly.

**(5) The Court may expedite this case on its own *without* making a finding of good cause.**

While Plaintiff has shown good cause to expedite this case under any of the three above-described circumstances, this Court need not sort through each of those independent arguments to determine this case ought to be expedited. This Court may expedite "on its own." USCIT Rule 3(g)(3). Thus, even if this Court finds that none of the three circumstances above *alone* supports good cause to expedite, this Court should still expedite this case based on the three circumstances *in conjunction* with the arguments below.

**(6) The Government's arguments do not support denying expedited treatment**

The Government will likely raise the specter of the UFLPA, claiming that Camel Energy is subject to the UFLPA and the UFLPA's serious subject matter weighs against expediting this case. But just the opposite is true. The Government has smeared Camel Energy with accusations that its Merchandise is produced using forced labor and is thus subject to the UFLPA. Yet when Camel Energy submitted thousands of pages responding to the Government's smears and showed—*definitively*—that the UFLPA does not apply, the Government went silent *for months*. It is the Government, not Camel Energy, that is not taking this matter seriously. The seriousness of the Government's charges against Plaintiff weigh in favor of expediting this case, not delaying it.

The Government may also argue that this case ought not be expedited because it needs discovery from Plaintiff's Malaysian manufacturer. But the burden of proof and what the Government needs to show in order to satisfy that burden of proof does not contemplate the Government to seek discovery. Again, "*[i]n the instance in which CBP takes no action and a deemed exclusion of merchandise occurs, the burden of proof, typically resting on the complainant, switches to CBP to demonstrate 'that it has good cause for not reaching an admissibility decision.'*" *Root Scis.*, 543 F. Supp. 3d at 1365–66 (internal citations omitted) (emphasis added).

This Court ought not allow the Government to delay disposition of this case by claiming that some conjectured fact in Malaysia (*about which they knew nothing when they sat on their hands for months*) now gives them good cause for having done nothing. The Government cannot satisfy its burden of proof with newly discovered evidence. Simply, discovery cannot save the Government's case, so this Court should expedite this case.

Lastly, the Government may argue that the number of entries (43) and ports involved (6) requires a longer discovery period. However, this is a red herring. The Merchandise and supply chain information involved in all 43 entries are substantially the same as in the Related Litigation. Production of documents in the Related Litigation has already begun and will continue throughout January 2026. This means that the majority of discovery required for this litigation will already be available to the parties well before the proposed close of discovery in Plaintiff's schedule. The only burden on the Government will be to coordinate depositions and emails for officers involved at those ports since the majority of fact and document discovery will be satisfied through the Related Litigation. As such, Plaintiff's proposed discovery deadline would not place an undue burden on the Government simply because it involves more ports and entries.

**(7) This case fits squarely within the plain meaning of USCIT Rule 3(g)(3) and should be given expedited treatment**

CBP excluded Plaintiff's Merchandise and then denied its protests as a matter of law, giving precedence to this action under the plain language of USCIT Rule 3(g)(3). CBP detained Plaintiff's shipments between August 21, 2025, and September 18, 2025. ECF 1, ¶ 30. In doing so, CBP alleges that the Merchandise was manufactured in violation of the UFLPA, which (1) bars goods produced using forced labor in the Xinjiang Uyghur Autonomous Region, People's Republic of China from entry into the United States, and (2) bars goods manufactured by entities on the UFLPA Entity List from entry into the United States. Id., ¶ 29. CBP's detention notice did not specify

9

which ground under the UFLPA it was detaining Plaintiff's Merchandise but gave Plaintiff 30 days to respond with evidence. Id., ¶¶ 33-34. Plaintiff responded to each notice of detention, but CBP failed to act or resolve a single response within the 30 days required and Plaintiff's 43 Entries were now deemed excluded by operation of law under 19 U.S.C. § 1499(c)(5). Id., ¶¶ 42-43. Plaintiff submitted protests of CBP's exclusion for all 43 Entries Section 515 of the Tariff Act of 1930, but CBP failed to respond to Plaintiff's protest within 30 days, meaning that the protest is now deemed denied as a matter of law. Id., ¶¶ 59-61; see 19 C.F.R. 174.21(b). To date, CBP has never explained why the Merchandise was detained or excluded, or what good cause it had to not act on Plaintiff's responses and protests within the timeframe prescribed by law. Because Plaintiff's protest was denied and its Merchandise continues to be excluded, this case should be given precedence and expedited treatment pursuant to the plain language of USCIT Rule 3(g)(3).

### III.     CONCLUSION AND RELIEF REQUESTED

For any of the above-described reasons, this Court should grant Plaintiff's Motion to Expedite (or *sua sponte* expedite the case) and enter Plaintiff's proposed schedule as follows:

1. Defendants shall answer or otherwise respond on or before Monday, January 12, 2026;

2. Initial Disclosures pursuant to USCIT Rule 26(a)(1)(A) are to be exchanged and USCIT Rule 73.1 documents filed on or before Monday, January 19, 2026;

3. Motions regarding the pleadings or other preliminary matters shall be filed on or before Monday, February 2, 2026;

4. Responses to motions on the pleadings or other preliminary matters shall be filed within five days after the motion is filed;

5. Replies to responses to motions on the pleadings or other preliminary matters shall be filed within three days after the response to the motion is filed;

6. Fact discovery shall be completed by Monday, April 13, 2026;

7. All dispositive motions, if any, shall be filed on or before Monday, May 4, 2026. No cross motions in response to a dispositive motion will be allowed;

8. Responses to dispositive motions shall be filed within seven business days after the motion is filed;

9. Replies to responses to dispositive motions shall be filed within five business days after the response to the motion is filed;

10. If no dispositive motions are filed, a request for trial and proposed order governing preparation for trial is to be filed on or before Monday, May 11, 2026;

11. If dispositive motions are submitted, a request for trial, if any, accompanied by an order governing preparation for trial shall be filed no later than ten business days after the Court's disposing of any and all pending dispositive motions; and

12. If necessary, trial will begin at a time and place ordered by the Court.

|  |  |
|---|---|
| | Respectfully submitted, |
| Dated:  December 22, 2025 | */s/ Mark V. Heusel* <br> Mark V. Heusel <br> Jacob L. Clark <br> Daniel C. Ziegler <br> DICKINSON WRIGHT PLLC <br> 350 S. Main Street, Suite 300 <br> Ann Arbor, MI 48104 <br> (734) 623-1908 <br> mheusel@dickinsonwright.com <br> jlclark@dickinsonwright.com <br> dziegler@dickinson-wright.com <br> *Attorneys for Plaintiff Camel Energy, Inc.* |

IN THE UNITED STATES
COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| CAMEL ENERGY, INC., | |
| Plaintiff, | Case No.: 25-00420 |
| v. | |
| | Hon. Claire R. Kelly |
| UNITED STATES OF AMERICA and UNITED STATES CUSTOMS AND BORDER PROTECTION, | |
| Defendants. | |

**[PROPOSED] ORDER GRANTING
MOTION TO EXPEDITE AND SCHEDULING ORDER**

Upon consideration of Plaintiff's Motion to Expedite and proposed schedule, the Court finds good cause to expedite under USCIT 3(g)(3) and **GRANTS** Plaintiff's Motion to Expedite. The Court hereby **ORDERS** the following expedited litigation schedule:

1. Defendants shall answer or otherwise respond on or before Monday, January 12, 2026;

2. Initial Disclosures pursuant to USCIT Rule 26(a)(1)(A) are to be exchanged and USCIT Rule 73.1 documents filed on or before Monday, January 19, 2026;

3. Motions regarding the pleadings or other preliminary matters shall be filed on or before Monday, February 2, 2026;

4. Responses to motions on the pleadings or other preliminary matters shall be filed within five days after the motion is filed;

5. Replies to responses to motions on the pleadings or other preliminary matters shall be filed within three days after the response to the motion is filed;

6. Fact discovery shall be completed by Monday, April 13, 2026;

7. All dispositive motions, if any, shall be filed on or before Monday, May 4, 2026. No cross motions in response to a dispositive motion will be allowed;

8. Responses to dispositive motions shall be filed within seven business days after the motion is filed;

9. Replies to responses to dispositive motions shall be filed within five business days after the response to the motion is filed;

10. If no dispositive motions are filed, a request for trial and proposed order governing preparation for trial is to be filed on or before Monday, May 11, 2026;

11. If dispositive motions are submitted, a request for trial, if any, accompanied by an order governing preparation for trial shall be filed no later than ten business days after the Court's disposing of any and all pending dispositive motions; and

12. If necessary, trial will begin at a time and place ordered by the Court.

/s/_____
Claire R. Kelly, Judge

Dated: _____
   New York, New York